# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 03-1889

_____

| | | |
|---|---|---|
| Northern Natural Gas Co.; Northern Border Pipeline Company, | * <br> * <br> * | |
| Plaintiffs - Appellees, | * <br> * | |
| v. | * <br> * | |
| Iowa Utilities Board, Utilities Division, Department of Commerce; Allan T. Thoms, | * <br> * <br> * | |
| | * | Appeal from the United States |
| Defendants, | * | District Court for the Southern |
| | * | District of Iowa. |
| Diane Munns, | * <br> * | |
| Defendant - Appellant, | * <br> * | |
| Susan Frye, | * <br> * | |
| Defendant, | * <br> * | |
| Mark O. Lambert; Elliott Smith, | * <br> * | |
| Defendants - Appellants. | * | |

_____

Submitted: February 10, 2004
Filed: August 11, 2004 (Corrected 9/21/04)

_____

Before MELLOY, McMILLIAN, and COLLOTON, Circuit Judges.

_____

COLLOTON, Circuit Judge.

Appellants Diane Munns, Mark Lambert, and Elliott Smith, members of the Iowa Utilities Board (collectively "the Board members"), appeal the district court's[1] grant of summary judgment and entry of a permanent injunction in favor of appellees Northern Natural Gas Company and Northern Border Pipeline Company in this case involving natural gas pipeline regulation. We affirm.

I.

This appeal concerns the efforts of the State of Iowa to regulate the environmental effects of the construction and maintenance of interstate natural gas pipelines, as well as its attempt to delineate private damage remedies for certain harms caused by natural gas companies. This is our court's second consideration of Iowa laws regulating the construction of natural gas pipelines. In *ANR Pipeline Company v. Iowa State Commerce Commission*, 828 F.2d 465, 473 (8th Cir. 1987), we held that Iowa statutes regulating the safety of interstate natural gas pipelines were preempted by federal law. We found that Iowa regulatory provisions relating to environmental protection, such as topsoil preservation, were not severable from the safety provisions, and were thus preempted as well. *Id.* Our court reserved decision, however, on the possibility that "Iowa may be able to enact legislation to protect its valuable topsoil and other aspects of the environment, and to provide private damage remedies, as long as the state regulations do not conflict with existing federal standards." *Id.*

_____

[1]The Honorable Harold D. Vietor, United States District Judge for the Southern District of Iowa.

-2-

Taking note of the court's statement, the Iowa legislature moved the environmental provisions preempted only by reason of their non-severability to a separate chapter of the Iowa Code, Chapter 479A. The Iowa legislature passed this statute in 1988 "to confer upon the utilities board the power and authority to implement certain controls over the transportation of natural gas to protect landowners and tenants from environmental or economic damages . . . ." Iowa Code § 479A.1. The Iowa Utilities Board has promulgated regulations to implement Iowa Code chapter 479A: Iowa Administrative Code chapter 199-12, which provides for various pipeline reporting and inspection requirements, and Iowa Administrative Code chapter 199-9, which requires the restoration of agricultural land following pipeline work. These land restoration standards address topsoil separation and replacement, removal of rock and debris, drain tile repair, revegetation, and erosion control, among others matters.

Northern Natural Gas and Northern Border Pipeline transport and sell natural gas in interstate commerce, and are subject to regulation by the Federal Energy Regulatory Commission (FERC) under the Natural Gas Act (NGA), 15 U.S.C. § 717 *et seq*. When natural gas companies seek to construct, extend, acquire, or operate facilities for the transportation or sale of natural gas in interstate commerce, the NGA requires that such companies must be granted a "certificate of public convenience and necessity" by the FERC. 15 U.S.C. § 717f(c)(1)(A). Such certificates are granted only when the FERC finds that a company is willing and able to comply with the requirements, rules, and regulations of the federal regulatory scheme. *Id.* § 717f(e).

In 2001, Northern Natural Gas sought to upgrade one of its pipelines near DeWitt, Iowa. The company was authorized to do so under a "blanket certificate" of public convenience and necessity granted by the FERC on September 1, 1982. *See Northern Natural Gas Co., Div. of InterNorth, Inc*., 20 FERC ¶ 62,410, 1982 WL 40871 (Sept. 1, 1982). With certain restrictions, a blanket certificate allows pipeline companies to engage in activities such as constructing new facilities without seeking

further approval from the FERC. *See* 18 C.F.R. §§ 157.203, 157.208. All activities undertaken pursuant to a blanket certificate must be consistent with such environmental statutes as the Clean Water Act, 33 U.S.C. § 1251, *et seq*. (2000), and the Clean Air Act, 42 U.S.C. § 7470, *et seq*. (2000). *See* 18 C.F.R. § 157.206. In 2001, in accordance with FERC regulations, Northern Natural Gas also asserted an intent to abide by the FERC's "Upland Erosion Control, Revegetation and Maintenance Plan" ("FERC Plan") in performing the upgrade. *See* 18 C.F.R. § 157.207(b)(3)(iv). The FERC Plan sets a minimum national standard for land restoration, and addresses many of the same environmental issues covered by Iowa's land restoration standards. This plan specifies standards for topsoil preservation, revegetation, removal of rock, erosion control, and other matters, but the requirements often differ to varying degrees from the land restoration standards established by the Iowa regulations.

To proceed with the upgrade project, Northern Natural Gas requested that the Iowa Utilities Board waive certain land restoration rules contained in Iowa Administrative Code chapter 199-9, citing its agreement to comply with the FERC Plan. *See* Iowa Admin. Code rs. 199-1.3, 199-9.2(2) (waiver provisions). The Board refused to grant a waiver, stating in part that "the FERC Plan does not require restoration of the affected land to a condition as good as or better than provided in the Board's rules." (Joint App. at 468).

The gas companies brought suit in the district court seeking injunctive relief and a declaratory judgment that the Iowa statutory and regulatory provisions were preempted by various provisions of federal law, including the Natural Gas Act and implementing regulations promulgated by the FERC, and violated the Contract

Clause of the United States Constitution.[2]   The parties filed cross-motions for summary judgment.

The district court granted the motion for summary judgment filed by the gas companies on the preemption claim, and also entered a permanent injunction prohibiting Iowa from enforcing Iowa Code chapter 479A and Iowa Administrative Code chapters 199-9 and 199-12.   The district court concluded that the Iowa provisions were preempted by federal law, because the field in which Iowa seeks to regulate is occupied by federal law, and because there is actual conflict between the Iowa provisions and federal law.   The court pointed to various regulations of the FERC promulgated pursuant to the NGA and the NEPA, as well as the FERC Plan, in determining that federal law preempts the Iowa provisions.   Alternatively, in the event that preemption did not invalidate all of Iowa Code chapter 479A, the district court also found that an Iowa statutory provision regarding reversion of rights-of-way, Iowa Code § 479A.27, violated the Contract Clause of the United States Constitution, Art. I, § 10, cl. 1, and granted the motion for summary judgment of the gas companies on this claim.   The Board members timely appealed.

This court reviews grants of summary judgment *de novo.  Murphey v. City of Minneapolis*, 358 F.3d 1074, 1077 (8th Cir. 2004).   We will affirm the grant of summary judgment if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c).

---

[2]All told, the gas companies claimed the Iowa provisions were preempted by the Natural Gas Act, the Natural Gas Policy Act, 15 U.S.C. §§ 3301-3432, the National Environmental Policy Act (NEPA), 42 U.S.C. §§ 4321-4370a, the Natural Gas Pipeline Safety Act, 49 U.S.C. §§ 60101-60128, regulations adopted by the FERC, 18 C.F.R. Parts 154, 157, 284, and 380, and regulations adopted by the United States Department of Transportation, 49 C.F.R. Parts 190-199.

II.

A.

Under the Supremacy Clause of the Constitution, Art. VI, cl. 2, state law will be preempted when it conflicts with or frustrates federal law. *CSX Transp., Inc. v. Easterwood*, 507 U.S. 658, 663 (1993). It is familiar doctrine that there are three primary ways that federal law may preempt state law. First, state law is preempted where Congress has expressly stated that it intends to prohibit state regulation in an area. *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001). Second, Congress may implicitly preempt state regulation of an area through occupation of a field. *Id.* A field is occupied when the federal regulatory scheme is "so pervasive as to make reasonable the inference that Congress left no room for the States to supplement it." *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947). Finally, even if Congress has not completely precluded the ability of States to regulate in a field, state regulations are preempted to the extent they conflict with federal law. *Silkwood v. Kerr-McGee Corp.*, 464 U.S. 238, 248 (1984). Such a conflict will be found "when it is impossible to comply with both state and federal law, or where the state law stands as an obstacle to the accomplishment of the full purposes and objectives of Congress." *Id.* (citations omitted).

We agree with the district court that Iowa Code chapter 479A and the implementing administrative code provisions regulate in a field that is occupied by federal law. Since our decision in *ANR Pipeline Company v. Iowa State Commerce Commission*, the Supreme Court decided *Schneidewind v. ANR Pipeline Company*, 485 U.S. 293 (1988), which provided substantial guidance with respect to the federal occupation of the field concerning the transportation and sale of natural gas. In *Schneidewind*, the Supreme Court examined a Michigan statute that required natural gas companies to obtain state approval prior to issuing long-term securities. *Id.* at 296-98. The Court held that the Michigan statute was preempted, because it

regulated in a field that the NGA occupied. *Id.* at 300. The Court concluded that the State's efforts to regulate the issuance of securities ultimately was designed to ensure that gas companies would charge "reasonable rates" and properly maintain their facilities. *Id.* at 307. Because the "central purpose" of the state law was to regulate "rates and facilities of natural gas companies" -- things over which the FERC has "comprehensive authority" -- the Court declared that the state statute was preempted. *Id.* at 308-09. The Court observed that the NGA had equipped the FERC adequately to address the precise concerns that the Michigan statute purported to manage. *Id.* at 309.

We believe it follows from *Schneidewind* that the Iowa provisions regulate in an occupied field, and are thus preempted by the Natural Gas Act. The NGA confers on the FERC authority over the issues addressed by the Iowa statutory and regulatory provisions. The NGA specifically provides that the FERC will oversee the construction and maintenance of natural gas pipelines through the issuance of certificates of public convenience and necessity. *See* 15 U.S.C. § 717f(c). The FERC has authority to regulate the construction, extension, operation, and acquisition of natural gas facilities, *see id*. § 717f(c)(1)(A), and does so through its extensive and detailed regulations concerning applications for certificates. *See generally* 18 C.F.R. Part 157, Subpart A.

Many of the FERC's regulations relate to environmental concerns. The FERC's standard conditions for granting blanket certificates of public convenience and necessity include compliance with many environmental statutes and regulations generally, 18 C.F.R. § 157.206(b), and the FERC Plan specifically. *Id*. § 157.206(b)(3)(iv). To implement the NEPA, the FERC also requires companies to prepare an environmental impact statement for certain major pipeline construction projects and for certain projects to develop underground natural gas storage facilities. *Id*. § 380.6(a)(2), (3). Applicants for certificates under the NGA typically must submit an environmental report that addresses a range of environmental issues,

including water use and quality, vegetation, geological resources, soils, and land use. *Id*. § 380.12(a), (d), (e), (h), (i), (j). Applicants for projects that will involve soil disturbance must submit a report detailing the "proposed mitigation measures to reduce the potential for adverse impact to soils or agricultural productivity," and how such measures compare to the FERC Plan. *Id.* § 380.12(i)(5). Thus, in analyzing the proposed projects of companies under its jurisdiction, the FERC considers environmental concerns, and specifically addresses the issues of soil preservation and land restoration -- the very areas which the Board wishes to regulate.

The Court in *Schneidewind* also took note of the "imminent possibility of collision between" the Michigan statute and the NGA, which "further demonstrate[d] the NGA's complete occupation of the field[.]" 485 U.S. at 310. As the district court observed, there is substantial potential for collision between the Iowa provisions and the FERC Plan, because the Iowa regulations impose additional requirements in a number of areas. For example, the Iowa regulations require that all topsoil up to 36 inches be separated when excavating, Iowa Admin. Code r. 199-9.4(1)(a), while the FERC Plan requires that "at least 12 inches of topsoil" be removed. FERC Plan section IV.B.3. The Iowa rules require that at least three passes be made with deep tillage equipment following replacement of any agricultural soil, Iowa Admin. Code r. 199-9.4(4)(a), while the FERC Plan only requires companies to "[p]low severely compacted agricultural areas with a paraplow or other deep tillage implement." FERC Plan section V.C.2. And the Iowa regulations are more specific than the FERC Plan regarding permanent drain tile repairs, and specifically require temporary repairs. *Compare* Iowa Admin. Code r. 199-9.4(2) *with* FERC Plan section IV.C.

In this case, the Iowa Utilities Board refused to grant a waiver for Northern Natural Gas's construction project, stating in part that the requirements under the FERC Plan were not as stringent as the Iowa regulations. This decision represents the sort of "disagreement between state and federal authorities" that further demonstrated the NGA's complete occupation of the field in *Schneidewind*. 485 U.S.

at 310. As in *Schneidewind*, the imminent possibility of collision between the Iowa provisions and the federal regulatory scheme affects the ability of FERC to "achieve the uniformity of regulation which was an objective of the Natural Gas Act," *id.*, and further demonstrates that the Iowa provisions regulate in an occupied field.

The Board members argue that the Iowa regulations are not preempted, because they do not conflict with the FERC Plan, and language in the FERC Plan even contemplates supplemental state environmental regulation. *Schneidewind*, however, did not rely on an actual conflict between federal and state regulations, or even on a specific intent by the FERC to preempt state law. The broad powers that the FERC had at its disposal in regulating the rates and facilities of natural gas companies were sufficient to demonstrate an implicit intent of Congress to preempt state regulation through occupation of the field. *Id.* at 309 & n.12. We think it is undeniable that Congress delegated authority to the FERC to regulate a wide range of environmental issues relating to pipeline facilities, and we agree with the conclusion of the Second Circuit that "[b]ecause FERC has authority to consider environmental issues, states may not engage in concurrent site-specific environmental review." *Nat'l Fuel Gas Supply Corp. v. Pub. Serv. Comm'n*, 894 F.2d 571, 579 (2d Cir. 1990). Accordingly, we are obliged to hold that the Iowa provisions regulate in an area over which the FERC exercises authority granted by Congress, and that Iowa Code chapter 479A and the attendant administrative regulations, Iowa Administrative Code chapters 199-9 and 199-12, are preempted.

B.

We have considered carefully whether a line of administrative decisions by the FERC, beginning with *Maritimes & Northeast Pipeline, L.L.C.* ("*Maritimes*"), impacts the preemption analysis that flows from *Schneidewind*. In *Maritimes*, the FERC interpreted language in a certificate issued to Maritimes & Northeast Pipeline Company in 1997. In that certificate, the FERC provided that "[t]he Commission

encourages cooperation between interstate pipelines and local authorities," but further stated that "this does not mean that state and local agencies, through application of state and local laws, may prohibit or unreasonably delay the construction of facilities approved by this Commission." *Maritimes and Northeast Pipeline, L.L.C.*, 80 FERC ¶ 61,136, 1997 WL 465608, at *13 n.40 (July 31, 1997). In its subsequent order, the FERC explained that "[a]lthough the Natural Gas Act and the regulations promulgated by the Commission pursuant to that statute generally preempt state and local law, the Commission has encouraged applicants to cooperate with state and local agencies with regard to the siting of pipeline facilities, environmental mitigation measures, and construction procedures." 81 FERC ¶ 61,166, 1997 WL 812154, at *7 (Nov. 4, 1997) (quoting *Iroquois Gas Transmission Sys.*, *L.P.*, 59 FERC ¶ 61,094, 1992 WL 510728, at *2 (Apr. 28, 1992)).[3] The Commission acknowledged that "as held by the [Second Circuit] in *National Fuel*, the NGA preempts state and local agencies from regulating the construction and operation of interstate pipeline facilities." *Maritimes*, 1997 WL 812154, at *8. But the FERC went on to say, "[n]evertheless, *as a matter of policy*, in part to implement the National Environmental Policy Act of 1969 (NEPA), the Commission has imposed upon applicants a requirement that they cooperate with State and local authorities." *Id*. (emphasis added). The FERC has required such cooperation through conditions placed in newly issued certificates of public convenience and necessity. *Id*.

In discussion that has created some confusion about the scope of preemption of state environmental regulations, the FERC continued in *Maritimes* by saying that "[i]f a conflict arises . . . between the requirements of a State or local agency and the Commission's certificate conditions, the principles of preemption will apply and the federal authorization will preempt the State or local requirements." *Id.* at *9. The

---

[3]*See also USG Pipeline Co.*, 82 FERC ¶ 61,117, 1998 WL 64137, at *9 & n.21 (Feb. 11, 1998); *Tenn. Gas Pipeline Co.*, 95 FERC ¶ 61,169, 2001 WL 469985, at *10 (May 3, 2001); *E. Tenn. Natural Gas Co.*, 102 FERC ¶ 61,225, 2003 WL 933916, at *17 (Feb. 27, 2003).

FERC rejected the contention that the gas company in *Maritimes* needed not go beyond federal standards to comply with more stringent or additional requirements imposed by the State, saying it did "not view the concept of conflict so broadly." *Id.* According to the FERC in *Maritimes*, a "rule of reason" must govern whether "additional costs or delays are unreasonable in light of the Commission's goal to include State and local authorities to the extent possible in the planning and construction activities of pipeline applicants." *Id.* In the end, the FERC directed the company that the certificate of public convenience and necessity, which was conditioned on cooperating with state and local regulators, did in fact mandate compliance with certain state environmental requirements. *Id.*; *see also NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 339, 346 n.13 (3d Cir. 2001) (concluding that field of natural gas regulation was occupied by federal law, but that FERC required gas company to comply with state regulations through conditions in certificate); *cf. U.S. Telecom. Ass'n v. FCC*, 359 F.3d 554, 567 (D.C. Cir. 2004) (federal agencies may condition their approval on the decision of a State or local agency, "so long as there is a reasonable connection between the outside entity's decision and the federal agency's determination.").

There is language in the *Maritimes* line of decisions to suggest that the FERC, if it were considering the issuance of a new certificate to Northern Natural Gas for its project in Iowa, might well require -- as a matter of FERC policy -- compliance with certain Iowa regulations that would not cause unreasonable cost or delay in a pipeline construction project. In this case, however, Northern Natural Gas is operating pursuant to a blanket certificate issued by the FERC in 1982, and there is no claim that the certificate includes conditions regarding state regulation comparable to those set forth in *Maritimes*. The Board members in this litigation have not challenged the validity of Northern Natural Gas's certificate, or the manner in which the FERC treats various natural gas companies through the issuance of different types of certificates. The State of Iowa would seem to have a strong case to make with the FERC that protection of Iowa's valuable natural resources warrants at least the same level of

-11-

cooperation by natural gas companies with state authorities that the FERC required of gas companies in other States through certificates discussed in the *Maritimes* line of decisions. But whether there is an avenue for the Board to seek relief from the FERC, in the way of *Maritimes*-like conditions on Northern Natural Gas's blanket certificate or otherwise, is not before us.

The preemptive effect of the NGA, as defined in *Schneidewind*, does not depend on whether the FERC intends to preempt state authority. Congress occupied the field of interstate natural gas rates and facilities by delegating broad powers to the FERC to regulate that field. The FERC, in the exercise of its regulatory authority, has elected as a matter of policy to require that certain companies cooperate with state and local authorities even though the field of regulation is occupied by federal law. That policy decision by the FERC, featured in newer certificates and enforced though adjudications such as *Maritimes*, does not change the preemptive effect of the NGA as enacted by Congress. Moreover, the FERC itself in *Maritimes* endorsed the holding of the Second Circuit in *National Fuel*, *see Maritimes*, 1997 WL 812154, at *8, a decision that fully supports our conclusion that the Iowa environmental provisions must be declared preempted.

\* \* \*

At oral argument, the Board members acknowledged that if the environmental provisions of Chapter 479A were preempted, then the other statutory sections would not be severable, and the entire chapter of the Code, as well as the accompanying regulations, would be preempted. As a result, we need not consider the district court's alternative holding that certain provisions of Iowa law conflicted with the Contract Clause. The judgment of the district court is affirmed.

_____